

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 16-20394 |
| v. | VIOLATION: |
| VOLKSWAGEN AG, | 18 U.S.C. § 371 |
| | 18 U.S.C. § 1512(c) |
| Defendant. | 18 U.S.C. § 542 |

FILED 2017 JAN 11 A 11: [illegible]
U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

## THIRD SUPERSEDING INFORMATION

The United States Department of Justice, Criminal Division, Fraud Section, the United States Attorney's Office for the Eastern District of Michigan, and the United States Department of Justice, Environment and Natural Resources Division, Environmental Crimes Section, charge:

## GENERAL ALLEGATIONS

1. VW AG was a motor vehicle manufacturer based in Wolfsburg, Germany. Together with its subsidiaries and affiliates, VW AG is referred to as "VW."

2. Audi AG ("Audi") was a motor vehicle manufacturer based in Ingolstadt, Germany and a subsidiary approximately 99.55% owned by VW AG.

3. Volkswagen Group of America, Inc. ("VW GOA") was a wholly-

owned subsidiary of VW AG based in Herndon, Virginia.

4. The purpose of the Clean Air Act and its implementing regulations was to protect human health and the environment by, among other things, reducing emissions of pollutants from new motor vehicles, including nitrogen oxides ("NOx").

5. The Clean Air Act required the U.S. Environmental Protection Agency ("EPA") to promulgate emissions standards for new motor vehicles. The EPA established standards and test procedures for light-duty motor vehicles sold in the United States, including emission standards for NOx.

6. The Clean Air Act prohibited manufacturers of new motor vehicles from selling, offering for sale, introducing or delivering for introduction into U.S. commerce, or importing (or causing the foregoing with respect to) any new motor vehicle unless the vehicle complied with U.S. emissions standards, including NOx emissions standards, and was issued an EPA certificate of conformity.

7. To obtain a certificate of conformity, a manufacturer was required to submit an application to the EPA for each model year and for each test group of vehicles that it intended to sell in the United States. The application was required to be in writing, to be signed by an authorized representative of the manufacturer, and to include, among other things, the results of testing done pursuant to the published Federal Test Procedures that measure NOx emissions, and a description of the

engine, emissions control system, and fuel system components, including a detailed description of each Auxiliary Emission Control Device ("AECD") to be installed on the vehicle.

8. An AECD was defined under U.S. law as "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." The manufacturer was also required to include a justification for each AECD. If the EPA, in reviewing the application for a certificate of conformity, determined that the AECD "reduced the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use," and that (1) it was not substantially included in the Federal Test Procedure, (2) the need for the AECD was not justified for protection of the vehicle against damage or accident, or (3) it went beyond the requirements of engine starting, the AECD was considered a "defeat device."

9. The EPA would not certify motor vehicles equipped with defeat devices. Manufacturers could not sell motor vehicles in the United States without a certificate of conformity from the EPA.

10. The California Air Resources Board ("CARB") (together with the EPA, "U.S. regulators") issued its own certificates, called executive orders, for the sale of

motor vehicles in the State of California. To obtain such a certificate, the manufacturer was required to satisfy the standards set forth by the State of California, which were equal to or more stringent than those of the EPA.

11. As part of the application for a certification process, manufacturers often worked in parallel with the EPA and CARB. To obtain a certificate of conformity from the EPA, manufacturers were required to demonstrate that the light-duty vehicles were equipped with an on-board diagnostic ("OBD") system capable of monitoring all emissions-related systems or components. Manufacturers could demonstrate compliance with California OBD standards in order to meet federal requirements. CARB reviewed applications from manufacturers, including VW, to determine whether their OBD systems were in compliance with California OBD standards, and CARB's conclusion would be included in the application the manufacturer submitted to the EPA.

12. In 1998, the United States established new federal emissions standards that would be implemented in separate steps, or Tiers. Tier II emissions standards, including for NOx emissions, were significantly stricter than Tier I. For light-duty vehicles, the regulations required manufacturers to begin to phase in compliance with the new, stricter Tier II NOx emissions standards in 2004 and required manufacturers to fully comply with the stricter standards for model year 2007. These strict U.S. NOx emissions standards were applicable specifically to vehicles in the

United States.

13. In the United States, VW sold, offered for sale, introduced into commerce, delivered for introduction into commerce, imported, or caused the foregoing actions (collectively, "sold in the United States") the following vehicles containing 2.0 liter diesel engines ("2.0 Liter Subject Vehicles"):

   a. Model Year ("MY") 2009-2015 VW Jetta;

   b. MY 2009-2014 VW Jetta Sportwagen;

   c. MY 2010-2015 VW Golf;

   d. MY 2015 VW Golf Sportwagen;

   e. MY 2010-2013, 2015 Audi A3;

   f. MY 2013-2015 VW Beetle and VW Beetle Convertible; and

   g. MY 2012-2015 VW Passat.

14. VW sold in the United States the following vehicles containing 3.0 liter diesel engines ("3.0 Liter Subject Vehicles"):

   a. MY 2009-2016 VW Touareg;

   b. MY 2009-2015 Audi Q7;

   c. MY 2014-2016 Audi A6 Quattro;

   d. MY 2014-2016 Audi A7 Quattro;

   e. MY 2014-2016 Audi A8L; and

   f. MY 2014-2016 Audi Q5.

5

15. VW GOA's Engineering and Environmental Office ("EEO") was located in Auburn Hills, Michigan, in the Eastern District of Michigan. Among other things, EEO prepared and submitted applications (the "Applications") for a certificate of conformity and an executive order (collectively, "Certificates") to the EPA and CARB to obtain authorization to sell each of the 2.0 Liter Subject Vehicles and 3.0 Liter Subject Vehicles (collectively, the "Subject Vehicles") in the United States. Audi supplied the 3.0 Liter diesel engine and related emissions software for use in and sale of MY 2013-2016 Porsche Cayenne diesel vehicles (the "Porsche Vehicles") in the United States. VW GOA's Test Center California performed testing related to the Subject Vehicles.

## COUNT 1
### (18 U.S.C. § 371 – Conspiracy to Defraud the United States, to Commit Wire Fraud, and to Violate the Clean Air Act)

16. Paragraphs 1 through 15 of this Third Superseding Information are realleged and incorporated by reference as though fully set forth herein.

17. From at least in or about May 2006 and continuing through at least November 2015, in Oakland County, within the Eastern District of Michigan, and elsewhere, defendant VOLKSWAGEN AG along with others, known and unknown to the Grand Jury, did willfully, knowingly, and deliberately combine, conspire, and confederate and did agree to:

a. defraud the United States by impairing, impeding, obstructing, and defeating a lawful function of the federal government, that is, the U.S. EPA's function of implementing and enforcing emissions standards for air pollutants for new motor vehicles under the Clean Air Act, by deceitful or dishonest means, in violation of 18 U.S.C. § 371;

b. commit wire fraud, that is, knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmit and cause to be transmitted by means of wire, radio, and television communication, writings, signs, signals, pictures, and sounds in interstate and foreign commerce for the purpose of executing such scheme and artifice in violation of 18 U.S.C. § 1343; and

c. violate the Clean Air Act, by making and causing to be made, false material statements, representations, and certifications in, and omitting and causing to be omitted material information from, notices, applications, records, reports, plans, and other documents required pursuant to the Clean Air Act to be filed or maintained, in violation of 42 U.S.C. § 7413(c)(2)(A).

## Purpose of the Conspiracy

18. The purpose of the conspiracy was for VW AG and its co-conspirators to unlawfully enrich themselves by, among other things, (a) deceiving U.S. regulators in order to obtain the necessary certificates to sell the Subject Vehicles and the Porsche Vehicles in the United States; (b) selling the Subject Vehicles and the Porsche Vehicles in the United States knowing that those vehicles did not meet U.S. emissions standards; (c) deceiving VW's U.S. customers by marketing the Subject Vehicles and the Porsche Vehicles as "clean diesel" and environmentally-friendly knowing that the diesel vehicles were intentionally designed to detect, evade and defeat U.S. emissions standards; and (d) concealing these facts from U.S. regulators and U.S. customers.

## Description of the Conspiracy

19. From approximately May 2006 to approximately November 2015, VW AG agreed to deceive U.S. regulators and U.S. customers about whether the Subject Vehicles and the Porsche Vehicles complied with U.S. emissions standards. During their involvement with design, marketing and/or sale of the Subject Vehicles and the Porsche Vehicles in the United States, VW AG: (a) knew that the Subject Vehicles and the Porsche Vehicles did not meet U.S. emissions standards; (b) knew that VW was using software to cheat the U.S. testing process by making it appear as if the Subject Vehicles and the Porsche Vehicles met U.S. emissions standards when, in

fact, they did not; and (c) attempted to and did conceal these facts from U.S. regulators and U.S. customers.

### Overt Acts

20. On or about April 8, 2008, VW AG, through VW GOA's EEO in Auburn Hills, Michigan, submitted the application for certification for the Model Year 2009 VW Jetta and Jetta Sportwagen vehicles.

21. On or about October 31, 2013, VW AG, through VW GOA's EEO in Auburn Hills, Michigan, submitted the final Application to EPA for Certification for the Model Year 2013 VW Jetta, Jetta Sportwagen, Golf and Beetle and Beetle Convertible vehicles.

All in violation of 18 U.S.C. § 371.

### COUNT 2
### (18 U.S.C. § 1512 – Obstruction of Justice)

22. Paragraphs 1 through 15 of this Third Superseding Information are realleged and incorporated by reference as though fully set forth herein.

23. From at least in or about August 2015 and continuing through in or about September 2015, in Oakland County, within the Eastern District of Michigan, and elsewhere, defendant VOLKSWAGEN AG did corruptly alter, destroy, mutilate and conceal business records of VW AG with the intent to impair the integrity of the

records and their availability for use in official proceedings, that is, proceedings before a federal grand jury and proceedings before the EPA.

### Acts of Obstruction

24. On or about August 31, 2015, following a meeting to prepare for a presentation to a U.S. regulator in which VW's use of the defeat device would be revealed, a VW AG supervisor deleted a folder on a computer regarding the EA 288 engine, deleted emails with the term "acoustic function," and instructed other subordinate employees to delete documents relating to diesel emissions issues.

25. At various times after September 18, 2015, a VW AG employee deleted files and emails related to the defeat device from VW AG computers.

All in violation of 18 U.S.C. § 1512(c)(1).

### COUNT 3
### (18 U.S.C. § 542 – Entry of Goods by False Statement)

26. Paragraphs 1 through 15 of this Third Superseding Information are realleged and incorporated by reference as though fully set forth herein.

27. From at least in or about January 2009 and continuing through in or about September 2015, in Oakland County, within the Eastern District of Michigan, and elsewhere, defendant VOLKSWAGEN AG did enter and introduce, and attempt to enter and introduce, into the commerce of the United States, imported merchandise, to wit, diesel motor vehicles, by means of false or fraudulent written

statements and practices that were material to the entry of the merchandise, to wit, falsely representing, at the time of importation, entry, or introduction into the United States, or at the time of attempted importation, entry, or introduction into the United States, that the vehicles complied with all U.S. environmental laws and regulations necessary for admission to the United States; affixing manufacturer's labels to the vehicles asserting compliance with applicable emissions requirements, knowing such statements to be false when made; and failing to disclose that the vehicles were equipped with an undisclosed and prohibited "defeat device" which caused the vehicles to be inadmissible to the United States.

All in violation of 18 U.S.C. § 542.

BARBARA L. MCQUADE
United States Attorney
Eastern District of Michigan

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division

MARK CHUTKOW
Chief, Criminal Division
JOHN K. NEAL
Chief, White Collar Crime Unit
Assistant United States Attorneys
Eastern District of Michigan

JENNIFER LEIGH BLACKWELL
Trial Attorney

ANDREW WEISSMANN
Chief
Fraud Section, Criminal Division
United States Department of Justice


BENJAMIN D. SINGER
Chief, Securities & Financial Fraud Unit
GARY A. WINTERS
ALISON ANDERSON
DAVID FUHR
Trial Attorneys

Dated: 1/11/17

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>2:16-cr-20394 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: JKN |

Case Title: USA v. JAMES LIANG, et al.

County where offense occurred: Oakland County

Check One:   ☒ Felony   ☐ Misdemeanor   ☐ Petty

___Indictment/___Information --- no prior complaint.
___Indictment/___Information --- based upon prior complaint [Case number: ]
___Indictment/ ✓ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

Superseding to Case No: 16-cr-20394     Judge: Sean F. Cox

☐ Corrects errors; no additional charges or defendants.
☒ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| VOLKSWAGEN AG | 18 USC § 371, §1512(c), and § 542 | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

January 11, 2017
Date

John K. Neal
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone:(313) 226-9644
Fax:   (313) 226-2873
E-Mail address: John.neal@usdoj.gov
Attorney Bar #:

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.